The 48-month sentence imposed in this case was unreasonable. Mr. Malla-Calle's properly 16 months. The District Court imposed a sentence three times his high end, stating that the sentence in his New York State case was too lenient. The New York State Court was in the best position to impose a just sentence for Mr. Malla-Calle's prior offense. In the District to justify a sentence 32 months higher than his high end. The sentence was unreasonable. As I mentioned Mr. Malla-Calle's properly calculated guideline range was ten to 16 months. That guideline range took into consideration his criminal history in two areas. First with regards to his criminal history points. For that offense he received four criminal history points for a criminal history category of three. His criminal history was also taken into account in establishing his offense level under 2L1.2. He received a four level enhancement for his prior sex offense from Rockland County. Notably there was no criminal history for Mr. Malla-Calle that was outside the relevant time frame and therefore excluded and he didn't have any unconvicted conduct in his case. The New York State Court was in the best position to sentence Mr. Malla-Calle for his underlying sex offense and I think the New York State Court got that sentence right. It was not too lenient. The sentencing court there had a front row seat to what had happened in that underlying offense. The judge was familiar with the facts, the evidence, understood the weaknesses and strengths of the case. Under New York law it appears he had a and all the parties there, the judge, the prosecution, the defense, probation, they were all involved. They had firsthand knowledge. Notably the New York court also gave him, it was a very low sentence, a very low sentence on a potential two to seven year sentence. That's correct. It gave him a one year sentence and then it also imposed a ten year probationary and included in that was he's not to return to the U.S. but importantly he's not to have unsupervised contact with children and he's got to seek sex offender treatment and that was a big part of what the district court was concerned about here. Not only did he get a very lenient sentence by any standards for his conduct but he didn't comply with those very important terms of a ten year probation. What I read the court emphasized that several times. And your honor what I'd like to point out is that under New York penal law 70.80 the judge was required to impose a two year, not less than two year sentence and not more than a seven year sentence unless having regard for the nature and the circumstance of the crime and the history and character of the defendant, the court concluded it would be unduly harsh to where the court had to be unless there were circumstances that justified a lesser sentence. And this court went ahead and imposed ten years probation when this was for a first-degree sexual abuse of a four-year-old sister. That's correct a one-time offense. So why weren't those those probationary conditions extremely important here? Well your honor I think that the probation conditions were extremely important and and despite what the court said I think that there was evidence in the record that Mr. Malachi had first of all there was no evidence in the record that his contact with his children had not been supervised. A letter from his wife indicated that she was aware of the sexual abuse and she specifically stated that there had been no physical or sexual abuse. She specifically stated in that letter that there was no that there had been no sexual abuse to her children. She also explained... Well that's just her children I mean he said that he took the children to school and that kind of thing right and so he had to be around other children other than his own children. And your honor that's correct and there was no evidence in the record that indicate that any of that any of his time around other children was unsupervised. Well that's not the question. The question is he was prohibited by his 10 years probationary sentence from being around children unsupervised. He chose after receiving a very lenient sentence to ignore that. Well your honor I... And he also did not receive sexual offender treatment or he certainly didn't put on any evidence of it. He did state to the court that he had taken classes in sexual that had taught him about sexual behavior and he did he did advise the court of that. He did but the court pointed out that he didn't provide any documentation to verify that right? That's correct those classes were taken in Ecuador and his his wife had tried to get documentation and get that over your honor but... I know that to some extent this ends up being a matter of framing but under one framing we're talking about a district court judge that was trying to punish him for to make up for what he didn't get in New York but under another framing which is what I want to pursue for a moment why isn't this a situation responsive to the 355 3a factors where the court is looking at deterrence because you didn't learn the first time that you should obey the law the circumstances of this offense in the sense that the conduct involved him violating his probationary conditions and again deterrence in the sense that he had a some of those conditions involved through what could be perceived as a continuing threat to children. In other words he was around children we knew he shouldn't have been around children he's coming back into the United States to visit his family so why aren't those conditions under that second framing entirely responsive to what 355 3a is about and we are not talking about the court saying oh boy I'm gonna go back and get you but you didn't get it in New York the first time. Well your honor I think in terms of deterrence there was evidence in the record that there had been no additional criminal conduct there was a he's not supposed to come back to the United States that's criminal conduct right but the court was primarily concerned about conduct related to minors and there was a certificate provided from the court in Ecuador that showed that he did not have that he had not been charged with any additional conduct and and as I said the letter from his wife provided that said he didn't have any contact with children no I mean that was the problem he violated those really important terms and your honor I do believe that the letter from his wife does indicate that she was aware of the offense and there's nothing in the record that shows that she was not supervising his conduct or his contact with his children but I think if the court looks at it this way if if the court believes that those were issues and he deserved he got a lenient sentence if you look at what he would have received if he had given the max been given the maximum sentence under New York law which was seven years he would have still been in a criminal history category of three for five criminal history points he would have had a 10 level enhancement under the 201.2 but still even with that he would have only been at 24 to 30 months this is a sentence 18 months more the high end of what he would have had if he had been given the maximum penalty under New York law and the premise of that line argument is that the court is trying to make up for what he didn't get in New York and what I'm saying is that's not the only way to read what the court was doing which was that the court was using that New York sentence to give it some clues into what the current offense tells us about the defendant in other words his respect for the law his respect for the deterrence that came out of New York sentence and and his willingness to do things that could jeopardize children whether he did it or not jeopardize children right I think that that was something that the court was concerned about but I think you have to look at what the court stated over and over and the court repeatedly stated throughout the sentencing transcript and then also in the statement of reasons that for the statement of reasons under the nature and circumstances and under 3553a under that section it's supposed to be the offense the instant offense so for re-entry and there was marked extreme conduct general aggravating factors but with his re-entry offense there was no extreme conduct he didn't attempt to flee when he when they were arresting him he didn't resist there was no physical confrontation there was no assault and unlike the average re-entry defender who has 3.2 prior deportations this was his he had one deportation he was coming to visit family which in the past visiting being with family had resulted in being convicted of a criminal offense and so why couldn't the court take into consideration what he was doing he viewed that as benign it could also be viewed as problematic right it could have been your honor but I think the fact that he had taken self-initiated because there was nobody he was deported and didn't have the opportunity to engage in the things that were required here in this country and yet when he was deported and he he got him his wife wrote a letter and he wrote a letter that he had taken classes in drug and alcohol abuse he was under the influence when he committed the offense so that was important for him to address he stated that he had taken some classes regarding regarding sexual conduct and there hadn't been any additional criminal conduct well the court didn't discount that the court spoke to that and so it considered it right and and I think partially your honor um I would like to reserve some time for rebuttal but I I think that the court's overall emphasis throughout the transcript in the statement of reasons was he got a lenient sentence in New York and no other defendant no other defendant that um uh her statement was that um no other defendant with criminal history similar to this has received a sentence that lenient similar defendants have received higher sentences in their state court offenses and I well you think the judge was referring to there seemed to me that she wasn't just referring to New York she seemed to be other state she said in their state court offenses other defendants she seemed to be saying generally you're going to get a higher sentence for this and certainly that's true in midwestern states that's that's correct your honor but I did include nine cases specifically because the the nationwide statistics show um and that the um I'll finish answering your question but I would like to reserve some time the nationwide statistics show that the average sentence is 13 months for someone in criminal history category 3 35 months for someone in criminal has criminal history category 6 so if you move him all the way over to criminal history category 6 the sentence still exceeds the 35 months by 13 months the the government wasn't happy because those were nationwide we don't know the specifics so I included nine cases of sex offenses individuals re-entry individuals who with prior sex offenses out of those the highest sentence was 30 months that was for sexual penetration in the second degree resulting in personal injury in New Mexico that man's gentleman that gentleman's guideline range was 37 to 46 months he actually got a variance with all the others child molestation aggravated child molestation lewd and lascivious acts with minors 24 months 24 months 18 months lewd and lascivious battery sex with a victim 12 years each of those 12 months how long did each of them serve their state crimes um some of them there was one uh that and what were their probationary terms which is we're talking about here some of that information wasn't available one was a gentleman served I mean we have one gentleman who served 16 months on third degree rape and delivering marijuana to a minor and he got 106 days for his re-entry he served 16 months so he served third degree rape which is different than what we have here right but but we do have I have pointed out specific cases with very similar behavior where the the um the sentence imposed was significantly less than the sentence imposed in this case and importantly the government's reason for asking for the 48 month sentence was because they said that that 48 they that is the sentence that they are nothing like the facts of Mr. Molokai and so you pick a 48 month sentence because you did it in another case and you're going to ask for it here because it's the same underlying conduct but the circumstances are entirely different it's there's just no way to get to the three times the we'll give you some time on rebuttal but let's hear from you thank you good morning your honors may it please the court tiffany walters for the united states the district court did not abuse its discretion in bearing upward to impose a 48 month sentence what about this reference to the 48 month sentence being the government advocated for it because it was like another case and that that apparently the argument is the circumstances of that case weren't like this one why don't you start there please for me and explain to me whether in fact the circumstances were different or not yes your honor um as far as kaiba on tele the government uh mr kaiba on tele was sentenced to 51 months and in that case the circumstances were different as any two cases are so in that case there was a prior re-entry and in that case there does appear to have been multiple victims and the sexual abuse does appear to have gone on for a longer period of time also the defendant in that case appears not to well he did not plead to that conduct so he required that conduct to be proved up at sentencing there wasn't actually a conviction because of the uh concern regarding the harm to the minor victims they would have to testify so certainly our argument is not that these cases are identical and that the court can say well if it was 51 months in this case and 40 months 48 months is correct in this case each sentencing case is an individual assessment of the 35 53a factors and while i think it's helpful to point to that class that case and say this this 48 month sentence is not outside the range of permissible choices that the district court could have imposed um i don't think it's a direct corollary and we're not claiming that it is um but what i do think the district court did here is go through the 53 35 53a factors as relevant to mr malachi and here um the district court definitely gave significant weight to his prior conviction for sexual abuse of a minor but that conviction was relevant to most of the 35 53a factors in sentencing for his current re-entry conviction it is part of his history and characteristics the court considered that he had his prior conviction that he was under the influence at the time that he indicated at the time that he did not understand that his conduct was wrong the court considered the probation violations and i'd like to directly address some of the questions uh regarding the probation violations um before the district court the united states asserted that it was reasonable to infer that not all of this conduct could have been supervised with his children um and that was not disputed below so this issue was not litigated a record was not developed on exactly whether or not his wife supervised or in what context and all of that uh but even if considering this this um this argument on plain error review if the court would choose to overlook the waiver that it wasn't also raised in the opening brief the record amply supports the district court's finding um the probation requirements required him not to have contact uh with children unless it was he was supervised by someone over the age of 21 who had knowledge of his conviction and that children were not allowed to stay overnight in his residence without permission of the probation officer he wasn't actively supervised so we know that he likely did not have that permission and then as his wife's supervision first in the letter the district court noted were not clear that she knew exactly what the conviction was for what the conduct was that underlied it that under there was underlying and then also the psr indicates that his wife was 21 years old at the time the psr was disclosed and that their oldest child was six years old so his wife was a child herself when that first child was born and was not qualified to be the adult supervision in that situation the district court was was appropriately concerned regarding this situation um the district court considered not only uh this conviction in terms of its history and characteristics but also in terms of the need to reflect the seriousness of the re-entry offense and to provide just punishment a re-entry is inherently different when it's committed by someone who has a prior history of a sex offense and has committed and has re-entered while on probation after having violated the terms of that probation that is part of the nature of that re-entry offense and we see the relevance of that in the guidelines which do increase uh the offense level based on the type of prior or the the level of sentence from a prior conviction and that also demonstrates why the guidelines aren't sufficient to fully capture the conduct here because the guidelines are solely concerned with the length of the sentence was it more or less than a year in one month was it more or less than two years was it more or less than are regarding a number of the 3553a factors and while the district court here obviously is that one of the arguments that's made by the defendant here is that even if he had served the full seven years under New York law his guideline range would have still have been far less than the 48 months that he got correct what does that say about sentencing disparity here so the district court referenced sentencing disparity and had he been sentenced to up to seven years it would hit that five-year cutoff he would get uh i believe 10 offense levels and his guideline range would go up to 33 we dispute slightly uh the 27 calculations because he received only two if i was only two right for acceptance of responsibility but certainly much less right but um that's if he had had the full seven sure the guidelines still are only looking at the sentencing range they're not looking at the conduct the underlying conduct for this offense was egregious and directly impacts public safety in a way that some other offenses may not or or at least to the same degree of concern to the safety of children even children in his family so it's appropriate for the court to consider that as part of the 3553a factors and the district court looked at it and said almost no no defendants who commit sex offenses like this receive such lenient sentences so inherently there's some disparity baked in but the court also said even if there is a disparity i find that it's warranted here and that's important because sentencing disparities are absolutely a factor under 3553a that the district court has to consider but it doesn't drive the analysis solely it is is one of those factors that the court has to balance and so the court can say well perhaps there is some disparity here but even so i'm going to look at these other factors including the seriousness of this offense the the threat to public safety the issue of deterrence where the to return and that i need to impose a longer sentence that will deter him this time so while that is absolutely one consideration the court considered that and and ultimately on weighing decided uh that that that wasn't sufficient to to hold the sentence within the guideline range or to limit it to 33 months as it would have if it was just looking at five years versus um five years versus the 35 355 days that the defendant received um the defendant also spends a lot of time talking about the statute of conviction in new york and i just want to point out that this is not a case where we're looking at it from a categorical lens where we're looking at the offense of the conviction and how we compare that um this is sentencing where the court can consider anything about the defendant's history and characteristics and we don't do categorical analysis and thank goodness we don't or at least not in this context i won't take categorically but here it's not relevant so here we're looking at um the underlying contact and conduct and that was not disputed uh mr malik hi never said i didn't do the conduct that i won't get into in detail i'm sure the court has reviewed the record that's reflected in in the psr and the district court is absolutely in a position to look at that conduct and say that conduct is egregious it presents an excessive risk to public safety he's shown that he's been able to harm a child and i'm concerned that he's going to do he could do it again and i need to deter him and i need to protect the public and those are all proper considerations of the 35 53a and ultimately this is this is a discretionary review we're looking at whether or not there's an abuse of discretion um this court in many cases has recognized that there's a range of permissible choices another judge may not have sentenced mr malik hi to this exact sentence this court might which is a different sentence but none of those are reasons to reverse the analysis is whether or not the court's decision was reasonable in light of the 35 53a factors as a whole and here i think because of the court's consideration of the facts and of the 35 53a factors we can see that it was and at what point would have cut off the appropriate here i mean what what's what's the limiting principle on your argument in terms of when the sentence would have been unreasonable i mean 144 months 96 months would that be okay your honor i can't answer that question because we don't have um any sort of means to calculate what the appropriate sentence is in this case and sentencing is uh necessarily fact bound and so the court looked at the facts and found that 48 months is there was appropriate here is there some upper limit presumably but i don't have the analysis from the supreme court gala from this court that would enable me to do anything more than pick a number out of out of my head i think that the court in in reviewing these sentences has looked at these cases individually looked at the 35 53a factors and determined whether or not it's reasonable in a given case and here i believe it is and i know that um mr malachi has cited a number of cases where defendants have received different sentences but we don't know exactly what the underlying offense conduct was were in all of those cases we don't know what the underlying sentence was in all of those cases and we don't know what the district court's rationale was in reaching that sentence this court has repeatedly indicated that this sort of comparison is almost always useless because we simply just don't have enough information so i think that the court has to look at the facts here in light of the 35 53a factors and and while the guideline range is absolutely one of those factors which the court this report here did consider it only goes so far in gall the court discussed a lot of this the issue of considering percentage deviations from the guideline sentence here we have a very low guideline sentence so in terms of percentage deviation any upward variance is going to look more extreme just as a matter of mathematics um the court also talked about well how do you how do you mathematically consider whether or not you know one particular 35 53a factor like rehabilitation is that worth a 30 reduction or another factor is worth whatever percentage reduction the the court described that mathematical calculation is almost comparing apples to oranges and i think that's true or counting apples with oranges i think is the court's language and i think that's true it's hard to say that this this is the range in any given case and this is what would be acceptable and this is the upper limit um so unfortunately i'm not able to directly answer your question chief judge holmes but i do think when we're looking at the facts of this case and the 30 for 53a factors the district court's decision was reasonable if there's no further questions the united states would ask the court to affirm thank you two minutes thank you your honors um i'd like to just address four points briefly first of all um council had it went from specific offense characteristics of criminal history to a sentence imposed model and in doing that the commission said that the length of the sentence imposed by the sentencing court is a strong indicator of the court's assessment of the seriousness of the predicate offense so there's deference built into the new structure of 2l 1.2 as as to the sentence the supreme court could have rejected the guidelines outright in booker but the court didn't they excised the the the sections that they felt made it unconstitutional or would have made it unconstitutional but in that they were clear that they wanted there to be some guidelines because you could have a judge who says yeah i want to ignore the guidelines because i don't like how the guidelines treat this certain class of people and i don't like what these people do so i'm going to give them what i want and it's clear that a sex offense is not a favorable offense but because somebody has a sex offense isn't a reason to give them an unreasonable sentence the government stated quote the reason why we're asking for the 48-month sentence that is the same sentence we requested in the antelli case it was like pulled out of the air you can't the the sentence has to be tethered to facts or it or the it makes a mockery of the guidelines and as it is right now the supreme court wanted the guidelines to remain in place there's just no way to get to the sentence of 48 months given mr malakai's conduct even if you sentence him at the highest amount under the state court system thank you counsel thank you submitted thank you for your strong arguments